UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAYMOND G. PAGE,

        Plaintiff,

v.

JEFFERSON TRANSIT AUTHORITY,
DAVID A. TURISSINI, AND EILEEN M.
LAWRENCE,

        Defendants.

Case No. C08-5456RJB

ORDER GRANTING
DEFENDANTS
JEFFERSON TRANSIT
AUTHORITY and DAVID
A. TURISSINI'S MOTION
FOR SUMMARY
JUDGMENT

        This matter comes before the Court on Jefferson Transit Authority ("JTA") and David A. Turissini's (collectively the "JTA Defendants") Motion for Summary Judgment. Dkt. 106. The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the file herein.

## I.    PROCEDURAL AND BACKGROUND FACTS

        On July 21, 2008, Plaintiff, *pro se*, filed a Complaint, alleging that he is a disabled person, and that Defendants discriminated against him based on his disability, retaliated against him for exercising his rights, violated his free speech and due process rights, and conspired to interfere with his civil rights. Dkt. 1. He cites the Americans with Disabilities Act ("ADA"), and 42 U.S.C. §§ 1983, 1985, 1986, and 1988. *Id.*

        On March 18, 2009, Ms. Lawrence's Motion for Summary Judgment was granted and Plaintiff's claims against her were dismissed. Dkt. 84. The remaining Defendants seek summary dismissal of the claims against them. Dkt. 106. Plaintiff concedes, in his Response, that all his claims against Mr. Turissini

should be dismissed, as should his claims asserted under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Dkt. 111, at 18. Accordingly, Plaintiff's claims against Mr. Turissini and all claims asserted under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 should be dismissed. Plaintiff argues that summary judgment should not be granted as to his ADA claim or his retaliation claim. Dkt. 111. This Opinion will address those remaining claims.

## A.    BACKGROUND

Plaintiff was employed by Jefferson Transit Authority ("JTA") as a bus driver. Dkt. 1, at 2; Dkt. 83, at 6. He began working for JTA in the spring of 2005. Dkt. 108, at 1. JTA provides public transportation services in Jefferson County, Washington. Dkt. 1, at 2. David Turissini is the General Manager of JTA and Van A. Church is the Finance/Human Resources Administrator of JTA. Dkt. 108, at 1.

Plaintiff has been receiving treatment for Major Depressive Disorder since the early 1990s. Dkt. 76-2, at 2. Plaintiff did not disclose his mental disorder to JTA when he began working. Dkt. 112-2, at 41-42. He alleges that his ex-wife disclosed his Major Depressive Disorder to JTA when she gave Mr. Church, the Human Resources Administrator, a document regarding his shoulder surgery in May of 2006. Dkt. 112-2, at 42. This document does not appear in the record. Plaintiff testified in his deposition that the document included directions regarding care of his shoulder and a list of prescriptions, including his antidepressant, sertraline. Dkt. 112-2, at 42.

On May 23, 2007, Plaintiff filed a grievance against JTA alleging "harassment of [Plaintiff] including, but not limited, to actions of JTA during meeting conducted on May 23, 2007." Dkt. 76-4, at 3. (There is also a June 2007 grievance regarding the same events. *Id.,* at 2). Plaintiff frequently refers to the events in this grievance, and so they are recounted here.

While Plaintiff was driving on August 22, 2006, his bus came into contact with loose gravel "under a forward frame member (skid plate) of the bus." Dkt. 76-4, at 5. Plaintiff complains that he was told that he did not cause damage to the bus, but later received a "false accident report" that alleged he was responsible for damage. *Id.* Plaintiff's grievance states that he "took strong exception" to the report

in meetings held in January of 2007 regarding the incident. *Id.* He alleges that he referred to the report as ongoing harassment. *Id.*

Plaintiff's May 2007 grievance states that on October 23, 2006, he and JTA supervisors held a meeting regarding Plaintiff's concern over driving his bus for four and half hours without a break. Dkt. 76-4, at 6. Plaintiff alleges that a supervisor then stated that "if he was having personal problems" he could use the Employee Assistance Program ("EAP"). *Id.*

The record contains a November 11, 2006, complaint from a disabled customer regarding Plaintiff. Dkt. 108-2, at 2. The customer alleged that Plaintiff failed to provide a lift for her cart, dragged her cart up the stairs, scolded her for the size of her cart, and yelled at her about it being in the aisle. Dkt. 108-2, at 2.

The record also contains a November 17, 2006, complaint from a customer that Plaintiff had closed the customer's arm in the door after a confrontation and failed to pick him up the next day. Dkt. 108-2, at 4. Later that day, Plaintiff and a supervisor had a discussion regarding the November 11, 2006, incident and the incident involving the customer's arm. Dkt. 76-4, at 27. Plaintiff was reminded to help passengers with wheel chairs. *Id.* He was given another referral to the EAP, although no requirement to use it was made. *Id.*

In his May 23, 2007 grievance, he argued that his employers November 11, 2006, "disciplinary" action was without just cause and there was no merit to the customers' complaint. Dkt. 76-4, at 6.

Plaintiff relates a meeting in his May 23, 2007 grievance, which purportedly took place that day. Dkt. 76-4, at 7. Plaintiff states that JTA called the meeting to discuss his "yelling" at a developmentally disabled passenger on May 17th 2007, and his absence from work on May 18th and 19th, 2007 *Id.* As to the accusation of "yelling" Plaintiff's grievance indicates that he was trying to get the developmentally disabled woman's attention to explain a change in the bus routes and she had on headphones. *Id.*, at 8. Plaintiff states that he felt there was a "gross disparity" between his actions and JTA "punitive predisposition." *Id.* Plaintiff states that another unfounded customer complaint was discussed at the meeting. *Id.* Plaintiff states that he was labeled a "disgruntled employee." *Id.* He alleges he stated that they had nothing further to discuss than JTA's "ongoing harassment" of him. *Id.* Plaintiff alleges further that JTA required that he resubmit a leave request regarding time he took off for an illness. *Id.* Plaintiff alleges that he was told that

he needed to take Unplanned General Leave and submit a note "describing the nature of your illness." *Id.*

Plaintiff indicated in his May 2007 grievance that he sought a hearing, requested that JTA stop harassing him, and to be "made whole." Dkt. 76-4, at 9.

On July 2, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), number 551-2007-01874, against JTA, ("July EEOC Complaint"). Dkt. 108-2, at 8. Plaintiff's July EEOC Complaint alleged that:

> On October 23, 2006, [Plaintiff] was in a meeting with [JTA] and Shop Steward Alice Lane. During this meeting, [Plaintiff] opposed JTA's unfair labor practices regarding [his] work schedule. . . . Following [his] opposition, [he] received a written disciplinary action on November 17, 2006, for a customer complaint. [He] was also referred to the Employee Assistance Program ("EAP"), which shocked [him]. [He] believed that [he] was being perceived as a person with probable alcohol misuse or illegal drug use issues. [He] also believe[d] that [his] employer was trying to state that [he] was "unfit for duty" based upon their perceptions.
> [He] believe[d] that [he] was discriminated against because of a perceived disability, in violation of the Americans with Disabilities Act of 1990, and that [he] was retaliated against for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Dkt. 108-2, at 8.

On July 11, 2007, JTA wrote Plaintiff a letter in response to his "grievance," which JTA calls a "complaint." Dkt. 112-6, at 2. JTA found no basis for Plaintiff's allegation of "harassment." *Id.*

Plaintiff's bus was running late on July 26, 2007. Dkt. 114, at 1. Plaintiff contacted dispatch. *Id.* Plaintiff was told to take some passengers to their final destination downtown at the end of his regular route. *Id.,* at 2. Plaintiff asked, "What it I am not available?" *Id.* On July 31, 2007, a similar incident purportedly occurred. *Id.*

A meeting was held on August 3, 2007, regarding the incidents which occurred on July 26, 2007 and July 31, 2007. Dkt. 112-6, at 20, and Dkt. 112-7, at 4.

On August 6, 2007, Plaintiff filed a Charge of Discrimination with the EEOC, number 551-2007-02155, against JTA, ("August EEOC Complaint"). Dkt. 108-2, at 10. Plaintiff charged that:

> [He was] a transit operator for [JTA]. [He] made a charge of discrimination . . . on July 2, 2007. Since then [he has] been retaliated against by being issued a letter of Written Reminder on August 13 [sic], 2007. This is step one in a six step disciplinary process that may lead to [his] discharge. [He felt] that this has been done in retaliation for [his] opposing unlawful employment practices through the EEO [sic] process.
> [He] believe[d] that these actions [were] in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990.

Dkt. 108-2, at 10.

On August 10, 2007, Plaintiff received a Written Reminder from JTA to accommodate passengers arriving on the last commuter routes. Dkt. 114-2, at 2. Plaintiff was also reminded to use the radios in a professional manner and to accept reasonable orders from dispatch personnel. *Id.* The July 26 and 31, 2007, events were referenced. *Id.*

Plaintiff filed another grievance with JTA on August 14, 2007. Dkt. 112-7, at 10-11. Plaintiff alleged that the August 10, 2007, Written Reminder he received was without due process or just cause. *Id.* Plaintiff alleges that his actions on July 26, and 31, 2007, were due to his need for emergency dental surgery. *Id.*

On August 15, 2007, JTA sent Plaintiff a letter stating that it received a complaint, that for "safety" reasons, must be kept anonymous. Dkt. 112-7, at 16. Plaintiff was placed on paid administrative leave, and required to participate in a psychological fitness for duty evaluation. Dkt. 112-7, at 16. The record indicates that the "complaint"came from Plaintiff's then wife, who purportedly expressed concern over the possibility that Plaintiff posed a danger to others. Dkt. 112-7, at 18.

Plaintiff amended his August EEOC Complaint on August 20, 2007. Dkt. 108, at 11. Plaintiff charged, in relevant part that, "[o]n August 16, 2007, [he] was suspended for alleged 'workplace safety concerns.' At that time [he was] not sure if [he would] be able to return to work or if [he would] be discharged." Dkt. 108-2, at 11.

Plaintiff participated in a fitness-for-duty evaluation performed by Bill R. Ekemo, Ph.D. Dkt. 112-7, at 23. Dr. Ekemo found that Plaintiff was fit for duty. *Id.* Plaintiff returned to work. Dkt. 76-2, at 14.

On November 21, 2007, Plaintiff filed a Charge of Discrimination with the EEOC, number 551-2008-00156, against JTA, ("November EEOC Complaint"). Dkt. 108-2, at 13. Plaintiff charged, in relevant part, that, "[he] was required to undergo psychological fitness for duty examination on August 29 and 30, 2007, which [he] believe[d] was in retaliation for two EEOC complaints that [he had] filed." Dkt. 108-2, at 13. He stated that he believed that he had "been subjected to retaliation" in violation of the ADA. Dkt. 108-2, at 13.

On April 28, 2009, the EEOC advised Plaintiff that there was insufficient evidence to conclude that he was disabled under the ADA or that his employer regards him as disabled. Dkt. 107-2, at 68. As to the July EEOC Complaint, the EEOC reminded Plaintiff that "opposing unfair labor practices is not an activity

protected by the statutes EEOC enforces." *Id.* As to his August EEOC Complaint, the EEOC informed Plaintiff that it "will not conclude that counseling or reminding employees about their job duties constitutes an adverse action." *Id.* As to his November EEOC Complaint, the EEOC found that JTA had "shown a legitimate nondiscriminatory reason for having [him] take the exam, and when the examiner concluded [he] was fit for duty, [he] returned to work." *Id.* The EEOC concluded that "[t]he evidence is insufficient to conclude that [he] had been unlawfully discriminated against by [JTA]." *Id.*

Plaintiff became depressed and went on emergency medical leave on May 1, 2008. Dkt. 76-2, at 15. Plaintiff did not return to work, and on December 1, 2008, he resigned. Dkt. 112-2, at 29.

## B.    PENDING MOTION FOR SUMMARY JUDGMENT

The JTA Defendants move for summary dismissal of Plaintiff's claims against them with prejudice, arguing that: 1) Plaintiff does not have a physical or mental impairment that substantially limits a major life activity as defined under the ADA, 2) Plaintiff was not "regarded" as disabled under the ADA, 3) Plaintiff did not suffer an adverse employment action, 4) Plaintiff can not show that JTA had a discriminatory intent under the ADA, 5) Plaintiff can not show evidence in support of his retaliation claim, 6) Plaintiff's claims of discrimination or retaliation not investigated by the EEOC are barred by his failure to exhaust his administrative remedies, and 6) Plaintiff's 42 U.S.C. § 1983, 1985, 1986 and 1988 claims should be dismissed. Dkts. 106 and 113.

Plaintiff responds, arguing that: 1) he has a physical disability - impotence (as a result of his medications) and a mental impairment - Major Depressive Disorder, 2) JTA regarded him as mentally disabled under the ADA, 3) adverse employment actions include the claims listed in the May 2007 grievance "that have affected [his] health," 4) he does not need to offer direct proof of discriminatory intent, 5) his retaliation claim is supported by filing EEOC charges, 6) Plaintiff has exhausted his administrative remedies, and 7) concedes that his remaining claims should be dismissed. Dkt. 111.

## II.    DISCUSSION

## A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving

party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## B.    ADA CLAIM

Under 42 U.S.C. § 12112(a), employers are prohibited from discriminating against "qualified individuals with a disability" in the terms, conditions, and privileges of employment. To make a claim under the ADA, an employee bears the ultimate burden of proving that he is: "(1) disabled under the Act, (2) a qualified individual with a disability, and (3) discriminated against because of the disability." *Bates v. United Parcel Service, Inc.,* 511 F.3d 974, 988 (9th Cir. 2008)(*internal quotations omitted*).

Defendants do not meaningfully argue that Plaintiff was not qualified for his position (the second prong), so this opinion will address the first and third prongs.

### 1. *Disabled Under the ADA*

The first issue is whether Plaintiff is "disabled" under the Act. The ADA defines "disability," in pertinent part, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The initial inquiry, then, is whether Plaintiff has an impairment which substantially limits one or more major life activities. Plaintiff argues in his Response that he has a physical impairment - impotence, a mental impairment - Major Depressive Disorder, and JTA "regarded" him as having a mental impairment. Dkt. 111.

### a. Physical or Mental Impairment that Substantially Limits Major Life Activities

Plaintiff asserts for the first time in his Response to this Summary Judgment Motion, which if granted will dismiss his entire case, that he is impotent. Dkt. 112, at 3. Aside from Plaintiff's self serving affidavit, there is no other evidence in the record supporting Plaintiff's assertion that he is impotent. However, under Ninth Circuit precedent, Plaintiff's "declaration that he is impotent as a result of the medications he must take . . . is sufficient to raise a genuine issue of material fact" as to whether he had the impairment. *McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999). The *McAlindin* Court also held that sexual relations are a major life activity. *Id.* Accordingly, Plaintiff has shown that his physical impairment of impotence, which significantly limits a major life activity, qualifies him as disabled under the Act.

Plaintiff also discusses his Major Depressive Disorder. An impairment covered under the ADA includes any mental or psychological disorder such as emotional or mental illness. 29 C.F.R. § 1630.2(h). Plaintiff has provided evidence that he has an impairment - Major Depressive Disorder. Dkt. 76-2.

A relevant question here, then, is whether Plaintiff's Major Depressive Disorder "substantially limits" major life activities. 42 U.S.C. § 12102(2). A major life activity is a function "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (I). "To be substantially limited in any of these activities, a person must be unable to

perform the major life activity or be significantly restricted as to condition, manner or duration under which he can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 884-85(9th Cir. 2004) (*citing* 29 C.F.R. § 1630.2(j)).

The U.S. Supreme Court has held that, "[i]f a person is taking measures to correct for, or mitigate, a . . . mental impairment, the effects of those measures - both positive and negative- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482 (1999). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Id.,* at 482-83. The Court notes that on September 25, 2008, the ADA Amendments Act of 2008 ("ADAAA")[1] was signed into law and took effect on January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553 (2008). Events in this case all took place prior to January 1, 2009, and so the ADAAA does not apply here.[2]

Based upon Plaintiff's deposition testimony, he does not feel that his major life activities are substantially limited by his Major Depression Disorder, so long as he has been taking his medication. Dkt. 112-2, at 26-28. Plaintiff testified that with the help of medication he could care for himself (Dkt. 112-2, at 26-27) and could perform the functions of his job as a bus driver (Dkt. 112-2, at 28). Plaintiff has been on his medication since August of 1996. Dkt. 112-2, at 27.

This Court is bound by U.S. Supreme Court precedent. Accordingly, Plaintiff has presented no evidence or legal authority to show that his treated Major Depression Disorder substantially limits any major life activities. He has not pointed to sufficient evidence in the record to create an issue of fact as to whether his mental impairment qualifies him as a disabled person under the first ADA test. *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004)(holding plaintiff failed to show that his impairments substantially limited any major life activity).

b. <u>Record of Impairment</u>

---

[1] Under the ADAAA, impairments "are to be evaluated in their unmitigated state" that is, that the "'substantially limits' inquiry 'shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication.'" *Salt River Project Agricultural Improvement and Power District*, 555 F.3d 850, 861-61 (9th Cir. 2009)(*quoting* 122 Stat. at 3556).

[2] Neither party raised the issue of retroactivity.

Plaintiff alleges that he is disabled under the second ADA test "having a record of impairment" as defined in 42 U.S.C. § 12102(2)(B). "Implementing regulations explain that having a record of a disability means either having a history of, or having been misclassified as having, a substantially limiting impairment." *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1011 (9th Cir. 2007)(*citing* 29 C.F.R. § 1630.2(k).

There is no evidence in the record that Plaintiff has a record of impotence. Plaintiff provides sufficient evidence of a history of his mental impairment - Major Depressive Disorder. Dkt. 76. He has made no showing that his treated mental impairment substantially limited any major life activity. *Coons,* at 886 (holding plaintiff not to be a disabled person under the second ADA test because his treated impairments did not substantially limit an major life activity). He takes the position that when the medication he was taking is accounted for, he is not disabled. Dkt. 112-2, at 33. Because Plaintiff presents no evidence of having a history of a mental impairment that substantially limits a major life activity, he is not a disabled person under the second, "record of impairment" ADA test. *Coons,* at 886.

### c.    "Regarded As" Claim

A person is regarded as being disabled if: "(1) a covered entity mistakenly believes that a person has a [mental] impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004)(*internal citations omitted*). "In order to state a 'regarded as' claim a plaintiff must establish that the employer believes that the plaintiff has some impairment, and provide evidence that the employer subjectively believes that the plaintiff is substantially limited in a major life activity." *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1006 (9th Cir. 2007).

Plaintiff asserts that JTA believed he had a "mental" impairment, but does not provide any specificity. Dkt. 111, at 9. Plaintiff offers as evidence the fact that his ex-wife showed the Human Resources Administrator paperwork regarding work restrictions after a surgery which contained a list of medications, including his antidepressant, sertraline. Dkt. 111. Plaintiff provides no evidence that anyone at JTA read the document, or even if they had, that they understood what sertraline treats. Plaintiff has failed to point to any evidence that anyone at JTA believed that he had a "mental impairment that

substantially limit[ed] one or more life activities." *Coons,* at 886. Plaintiff has failed to point to any evidence that JTA mistakenly believed that Plaintiff's "actual, nonlimiting impairment substantially limit[ed] one or more major life activities." *Id.*

Plaintiff essentially argues that he does not have direct evidence of JTA's subjective beliefs. The *Walton* Court considered the circumstance, like here, of when a plaintiff does not have direct evidence of an employer's subjective belief. *Id.* The Court held "[i]f the plaintiff does not have direct evidence of the employer's subjective belief that the plaintiff is substantially limited in a major life activity, the plaintiff must further provide evidence that the impairment imputed to the plaintiff is, objectively, a substantially limiting impairment." *Id.* (*citing Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001).

Plaintiff has failed to show that there is any evidence that "a mental impairment" allegedly imputed to him is, objectively, a substantially limiting impairment. Plaintiff basically argues that the fact that he was sent for a fitness for duty mental evaluation shows that JTA believed that he had a mental impairment that substantially limited his ability to drive a bus. "An allegation that the employer regards the impairment as precluding the employee from a single, particular position is insufficient to support a claim that the employer regards the employee as having a substantially limiting impairment." *Walton,* at 1006 (*internal citations omitted*). Plaintiff's argument that a JTA manager's offering him information of the existence of an Employee Assistance Program is even less persuasive.

To the extent that Plaintiff's position is that JTA believed his mental impairment substantially limited his ability to work, Plaintiff still does not prevail. A "plaintiff alleging substantial limitation in the major life activity of working 'must present specific evidence about relevant labor markets to defeat summary judgment' and 'identify what requirements posed by the class of ... jobs ... were problematic in light of the limitations imposed on him.'" *Id.* Plaintiff does not meet this evidentiary requirement. There is no evidence in the record regarding relevant labor markets or his particular training, knowledge, skills or abilities. Plaintiff has failed to raise a genuine issue of material fact that he was substantially limited in the major life activity of working, or was mistakenly believed to be substantially limited in the major life activity of working.

Plaintiff presents no evidence that he is regarded as having an impairment that substantially limits a major life activity. *Coons,* at 886. He has not shown that he is a disabled person under the third "being

regarded as disabled" ADA test. *Id.*

            d.    Conclusion

Plaintiff has provided an issue of fact as to whether his impotence qualifies him as a disabled person under the ADA. Plaintiff's mental impairment "fails all three ADA tests for determining whether a person is disabled." *Coons,* at 886.

            2.    *Discriminated Against Because of the Disability*

"The ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for accommodation - a motivating factor standard." *Dark v. Curry County,* 451 F.3d 1078, 1085 (9th Cir. 2006).

There is no mention in the record that JTA had any knowledge or suspected that Plaintiff was impotent. There is no evidence in the record that JTA took any action against Plaintiff based upon his physical disability.

Even assuming that Plaintiff has or was regarded as having a mental impairment which significantly impacts a major life activity (that he was disabled under the ADA), he makes no showing that JTA took any adverse employment actions based on his disability. None of the six issues raised in his May 2007 grievance make any mention of a disability or imply that JTA took any adverse action against him based on his disability. Plaintiff does not show that any of the other actions taken by JTA were adverse employment actions or were motivated in any way by Plaintiff's mental impairment. Plaintiff repeatedly states in his deposition that he "did not know" what motivated JTA (Dkt. 107-2, at 18-22), and points to nothing from which disability discrimination may be inferred.

Plaintiff has failed to provide sufficient evidence to show that there are issues of fact as to whether JTA took an adverse employment action against him "motivated, even in part, by animus based on a his disabilities." *Dark,* at 1085.

            3.    *Conclusion on ADA Claim*

Plaintiff has failed to show that there are issues of fact as to whether Defendants took adverse employment actions against him based on his physical or mental disabilities. The JTA Defendants' Motion for Summary Judgment should be granted and Plaintiff's claim for discrimination under the ADA should be dismissed.

## C.    RETALIATION CLAIM

### 1.    *Exhaustion*

"Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dept.,* 276 F.3d 1091, 1099 (9th Cir. 2002) (*citing* 42 U.S.C. § 2000e-5(b)). The language of EEOC charges are construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading. *Id.* at 1100 (*internal citation omitted*). "The crucial element of a charge of discrimination is the factual statement contained therein. Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* (*internal citation omitted*).

Defendants argue that Plaintiff did not make a claim for retaliation in the EEOC complaint. Dkt. 106. Plaintiff's July EEOC Complaint specifically states that he "was retaliated against for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended." Dkt. 108-2, at 8. Plaintiff mentions "retaliation" in his other EEOC Complaints. Dkts. 108-2, at 10, and 108-2, at 13. Liberally construing Plaintiff's EEOC complaints, he sufficiently raises the issue of retaliation.

### 2.    *Elements of Retaliation*

Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a retaliation claim under the ADA, a plaintiff must show: (1) involvement in a protected activity, (2) they suffered an adverse employment action, and (3) a causal link between the two. *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)).

### a. Involvement in a Protected Activity

The JTA Defendants do not dispute that filing a complaint with the EEOC is protected activity. Plaintiff has failed to show that any actions taken before the EEOC complaints were filed were protected activity.

### b. Adverse Employment Action and a Causal Connection Between the Two

An action is an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000).

As above, Plaintiff fails to offer any evidence that JTA took an adverse employment action against him. Plaintiff points to the August 10, 2007, Written Reminder from JTA to accommodate passengers arriving on the last commuter routes (Dkt. 114-2, at 2) as an adverse employment action. Dkt. 111. Counseling Plaintiff regarding his duties is a trivial employment action which would not "deter reasonable employees from engaging in a protected activity." *Ray*, at 1243.

Plaintiff refers to his having to participate in the psychological fitness for duty exam. Dkt. 111. Plaintiff points to no authority supporting the position that an employer's requirement that an employee submit to a fitness for duty examination is an adverse employment action. Placing an employee on paid administrative leave pending the results of an psychological fitness for duty examination is not an adverse employment action. *See e.g. Nichols et al. v. Southern Illinois University-Edwardsville,* 510 F.3d 772, 786-787 (7th Cir. 2007)(holding that placing an employee on paid administrative leave pending the outcome of a psychological fitness for duty exam is not an adverse action); *See Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir.2000) (employee did not suffer any adverse action by being required to undergo a psychological examination following an altercation with a colleague); and *See Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 891-92 (8th Cir.2005) (employee did not suffer a materially adverse action when his employer placed him on administrative leave pending a departmental investigation). Here, Plaintiff returned to work for several months after he was found fit for duty. He did not see a change in pay or benefits. Plaintiff did not go on medical leave until May 1, 2008, a few days after the EEOC dismissed his complaints. Plaintiff does not make any showing that his decision to quit his job after several months of medical leave was an "adverse employment action" that JTA took due to his filings with the EEOC.

3. <u>Conclusion on Retaliation Claim</u>

Plaintiff fails to offer evidence of a causal connection between the protected activity and any adverse employment action. Defendant's motion for summary dismissal of this claim should be granted.

### III. <u>ORDER</u>

Therefore, it is hereby, **ORDERED** that:

• Jefferson Transit Authority and David A. Turissini's Motion for Summary Judgment (Dkt. 106) is **GRANTED**;

• Plaintiff's claims are **DISMISSED WITH PREJUDICE**; and

• The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 15th day of July, 2009.


Robert J. Bryan
United States District Judge